**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **In re** | § | **Case No. 21-70009** |
| | § | |
| **JOSIAH'S TRUCKING LLC** | § | **(Involuntary Proceeding)** |
| | § | |
| **Alleged Debtor.** | § | |

**PETITIONING CREDITORS' EMERGENCY MOTION**
**FOR AN ORDER APPOINTING AN INTERIM TRUSTEE**
**UNDER U.S.C. § 701 AND GRANTING EMERGENCY RELIEF**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THE PETITIONING CREDITORS REQUEST THAT THE COURT GRANT THE EMERECNY RELIEF REQUESTED HEREIN AS SOON AS IS PRACTICABLE, BUT NOT LATER THAN FEBRUARY 1, 2021.**

TO THE HONORABLE EDUARDO RODRIGUEZ, UNITED STATES BANKRUPTCY

JUDGE

Petitioning Creditors[1] file this Emergency Motion for an Order Appointing an Interim Trustee under 11 U.S.C. § 701 and Granting Emergency Relief (the "Motion"), and in support hereof, respectfully state as follows:

## I.
## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409

2.      The statutory basis for the relief requested herein is 11 U.S.C. §§ 105(a), 303(g), and 701 and Rule 2001 of the Federal Rules of Bankruptcy Procedure as made applicable to the appointment of an Interim Trustee.

## II.
## BACKGROUND

3.      On January 24, 2021 (the "Petition Date"), the three (3) Petitioning Creditors filed an involuntary bankruptcy petition [Docket No. 1] seeking an order for relief against JOSIAH'S TRUCKING LLC  (the "Alleged Debtor" or "JOSIAH'S ") under chapter 7, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, McAllen Division (the "Court").

4.      Petitioning Creditors are all among a class of injured victims or representatives of victims which include personal-injury claims, survival claims, and wrongful-death claims, arising from the negligent collision and accident caused by and involving a JOSIAH'S tractor-trailer.  This accident occurred on December 19, 2020, Juan Manuel Carrerra was driving a tractor-trailer combination, owned and controlled by Josiah's Trucking LLC and David Vasquez, northbound on FM 493 in Edinburg, Texas. When entering a curve in the roadway, Mr. Carrerra lost control of

---

[1]      The Petitioning Creditors filing the original Involuntary Petition are:  Sonia Tellez, Carlos Tellez and Rosemary Rodriguez, Individually and as next friend of I. Tellez, a minor.

the tractor-trailer sending the trailer portion of the vehicle into the southbound lane.  At that moment, Carlos Tellez, Jr., was travelling in a vehicle in the southbound lane on FM 493. The trailer portion of the tractor-trailer invaded the southbound lane striking Carlos Tellez, Jr., causing fatal injuries that led to his death.  Anna Isabel Ortiz also sustained fatal injuries as a result of the Accident.

5.      The Debtor is not currently operating any business and is insolvent and unable to pay its debts as they mature.  The Debtor's insolvency was assured at the moment of the accident, and the Debtor has been operating in the zone of insolvency since the accident, as fiduciaries to the Petitioning Creditors.  The Debtor and its agents have breached that fiduciary duty.

6.      At the time of the Accident, Brooklyn Specialty Insurance Company RRG, Inc. ("the Insurance Company") insured JOSIAH under Policy ATP-4-062020 ("the Policy").  The Insurance Company immediately began its investigation and its work with the counsel for the Petitioning Creditors.  Notice was given in writing of the claims and suit was filed by the Petitioning Creditors on January 4, 2021 and written notice of the claims was made several weeks before this suit.

7.      In response to the Petitioning Creditors notice of claims, the Insurance Company has asserted that the Policy provides only Seven Hundred and Fifty Thousand Dollars ($750,000.00) in liability coverage.  If the Insurance Company is correct, this may be the total amount of coverage under the terms of the Policy, regardless of the number of potential insured or the number of persons with claims as a result of the accident in question.

8.      Under the undisputed circumstances of this case, and the rule set out in *Martinez v. OGA Charters, L.L.C. (In re Charters, L.L.C.)*, 901 F.3d 599 (5th Cir. 2018), affirming the opinion by this Court, the insurance policy proceeds become property of the Debtor and accordingly, upon

filing of a bankruptcy case are property of the bankruptcy estate under 11 U.S.C. § 541(a)(1) at the time of insolvency, obvious proceeds exhaustion, and are subject to the automatic stay, and insurers (or entities seeking payments from the policy or entities or individuals in possession of the proceeds of such Policy) must seek relief from the automatic stay before making any disposition of funds paid under the policy.  Further, because the policy proceeds are property of the estate, those proceeds increase the overall value of the estate for the benefit of all creditors, not just a favored few.

9.      It has long been the law in Texas that an insurer faced with multiple claims and inadequate limits may enter into reasonable settlements with fewer than all claimants even though those settlements exhaust limits. *Texas Farmers Ins. Co. v. Soriano*, 81 S.W.2d 312 (Texas 1994). *OGA Charters* limits the scope of *Soriano* to expand a debtor's property interests beyond what applicable state law otherwise provides.[2]

10.      The real motives at play here mimic the carriers desire to delay certain injured victims, while favoring others for a single purpose.  Under *Soriano*, an insurer could exhaust limits through reasonable settlements and by doing so end its obligation to provide a defense of other covered claims.  Under *OGA Charters*, an insurer may be denied the right to exhaust its limits, remaining obligated to provide a defense of all pending claims.

11.      Petitioning Creditors also believe that the Debtor or its insurers are intending to, or may have already settled and made distributions to some injured persons. None of the Petitioning Claimants have settled or received any payments.  Also upon information and belief, these

---

[2]      Bankruptcy Code § 541, which defines property of a debtor's bankruptcy estate, does not create property interests that do not otherwise exist.  It merely recognizes and enforces whatever property interests the debtor may have as of commencement of the bankruptcy case. *OGA Charters* appears to clearly go beyond § 541 by recognizing an "equitable" interest in property that was not earlier recognized in the Fifth Circuit prior to *OGA Charters*.

distributions were made with the knowledge that some or all of the Petitioning Creditors would not receive any proceeds, and with the knowledge that the Debtor is hopelessly insolvent and was insolvent at the time of any such settlements and/or distributions. Thus, these payments were intentional and knowing preferences, if not fraudulent transfers.

12.     If a liability insurer pays policy limits to resolve one or more claims against an insured, leaving other pending claims without coverage, and the insured later files bankruptcy, the *OGA Charters* holding could give rise to avoidance actions by a creative debtor, committee or trustee. A fundamental requirement of any bankruptcy avoidance action is that the debtor have an interest in the assets that were transferred. When faced with multiple claims and insufficient limits, *OGA Charters* now creates in the insured-debtor a property interest in liability policy proceeds. Such avoidance actions could ultimately expose the insurer to liability well in excess of its policy limits.

13.     Petitioning Creditors filed this involuntary bankruptcy upon their collective unpaid claims. The Petitioning Creditors hold claims easily in excess of $3 million that are neither contingent as to liability nor subject of a bona fide dispute. Liability has already been determined by the Insurance Company, and damages have been set at not less than the exhausted insurance policy.

14.     This attempt to unilaterally determine by the Insurers those among the victim-creditors they will favor with a distribution of the Debtor's property is a scheme to create, at best, avoidable preferences, both pre-petition and also during this involuntary petition "gap" period, and at worse, fraudulent transfers of the Debtor's property by its fiduciary the Insurance Company, which would require the Trustee of the Debtor to sue the transferor of the fraudulent transferee and any recipient of the transfer. In every event, such scheme and conduct is not operations in the

ordinary course of the Debtor's business, in particular since the Debtor is not operating its business. The Debtor may at this time be represented only by counsel being paid by the insurance carrier, and may be operating with a significant conflict of interest (as a fiduciary duties of a Debtor are to creditors once the Debtor enters the zone of insolvency).[3]

15.     The Petitioning Creditors served a copy of the involuntary petition on Alleged Debtor and its registered agent, David Vasquez at 7612 Petirrojo Street, Edinburg, Texas 78542, via overnight delivery on the Petition Date and the Summons to the Debtor when issued by the Clerk.  The Petitioning Creditors served the Debtor's (and if available, its counsel when known will be promptly notified) with the summons and involuntary petition on January 24, 2021 [Docket No. above].

16.     Petitioning Creditors shall promptly file a joint verified emergency motion to enjoin, Pursuant to 11 U.S.C. § 105, and Rule 7065, BRP, the Dissipation of Assets (the "Proceeds") by the Debtor and its Insurers or recipients of the proceeds ("Motion to Enjoin").

17.     The Motion to Enjoin will be set as soon as the Court has time to schedule.

18.     Alleged Debtor is currently an insolvent company with substantially all of its assets consisting of an insurance policy providing for only Seven Hundred and Fifty Thousand Dollars ($750,000.00) in liability coverage.

---

[3]     **Breach of Fiduciary Duty**:  Fiduciary duties under Texas law and statutes are owed not only to the corporation and its shareholders, but also to the creditors of an insolvent entity. See *Torch Liquidating Trust ex rel. Bridge Associates, L.L.C. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009).  Officers and directors that are aware that the corporation is insolvent, or within the "zone of insolvency" as in this case, have expanded fiduciary duties to include the creditors of the corporation.  *See Weaver v. Kellogg,* 216 B.R. 563, 583-84 (S.D.Tex.1997) (holding that, under both Delaware and Texas law, corporate insiders may have a fiduciary duty to the corporation's creditors even when the corporation was not insolvent and, thus, a plaintiff may prevail on a breach of corporate duty claim if he shows, for each wrongful transaction, that the corporation was in "the vicinity of insolvency.")

19.      Most significant to the Debtor and its insurer's intent to implement a plan designed to eviscerate the policy of "fair and equitable claims distribution", and to further what may be their private and improper motives.

20.      Both before and after these transactions, the Alleged Debtor was legally insolvent and generally unable to pay its debts as they became due.  The numerous lawsuits filed against Alleged Debtor demonstrate that it is unable to pay its undisputed debts as they become due.

21.      The Petitioning Creditors filed the involuntary petition in order to bring the property that would be lost as a result of the Alleged Debtor's attempt to distribute the Alleged Debtor's property in a scheme to create, at best, avoidable preferences both pre petition and also during this involuntary petition "gap" period, and at worse, fraudulent transfers of the Debtor's property which would require the Trustee of the Debtor to sue the transferor of the fraudulent transferee and any recipient of the transfer (the "Transfers").  There is not yet an order for relief in this case.  An interim trustee is necessary in this matter to preserve property of the Alleged Debtor's estate and to prevent further loss to the Alleged Debtor's estate and its creditors.

<u>**RELIEF REQUESTED**</u>

22.      By this Motion, the Petitioning Creditors seek the appointment of an interim Chapter 7 trustee to: (1) take possession of the property of the Alleged Debtor's estate and to operate the Alleged Debtor's business in order to preserve the property of the estate; (2) collect and analyze the Alleged Debtor's financial records to identify all property lost through the Transfers and/or preferences, including the "sales" discussed above, and to bring the property back into the estate for the benefit of creditors; and (3) prevent any further loss to the estate.

23.      The Petitioning Creditors therefore request that the Court enter an order appointing an interim Chapter 7 Trustee trustee under 11 U.S.C. § 701 and granting emergency relief.

24.      In this case, the Petitioning Creditors seek the immediate appointment of an interim trustee to protect the assets of the Alleged Debtor's estate, prevent concealment, waste, or loss of assets, and importantly, to avoid the irreparable harm Petitioning Creditors will suffer if the Alleged Debtor is permitted to dissipate and deplete assets currently under its control by requesting the Interim to seek prompt injunctive relief to protect all "proceeds" of the Debtor's insurance policies, including any funds in the hands of the Insurance Company or any third parties.

25.      Due to the nature of the risk that cash will be dissipated or secreted, it is imperative that an interim trustee begin work immediately to marshal all of Alleged Debtor's assets, as well as begin assessing whether suspected fraudulent transfers made in furtherance of any discovered scheme to denude the Debtor's estate may be recovered and properly distributed to creditors. To prevent further loss to Petitioning Creditors, as well as other creditors, an interim trustee needs to be appointed.

## ARGUMENTS AND AUTHORITIES

26.      Pursuant to section 105(a) of the Bankruptcy Code, the Court is authorized to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier, Bankruptcy ¶ 105.01 (Alan N. Resnick and Henry J. Sommer eds., 2009).

27.      Section 303(g) of the Bankruptcy Code and Rule 2001 of the Federal Rules of Bankruptcy Procedure authorize the appointment of an interim trustee after a chapter 7 involuntary bankruptcy case is commenced. Section 303(g) of the Bankruptcy Code provides, in pertinent part, as follows:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in

interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

11 U.S.C. § 303(g).  In an involuntary case, as opposed to voluntary case, the order for relief is only entered if the petition is not successfully or timely controverted by the debtor.  This period of time before the order for relief is issued is known as the "gap" period. *In re Pucci Shoes, Inc*., 120 F.3d 38, 41 (4th Cir. 1997). Pursuant to section 303(g), an interim trustee may be appointed during the "gap" period to prevent the debtor from dissipating his or her assets. See *In re The Centre for Mgmt. & Tech., Inc*., 2007 WL3197221, *2 (Bankr. D. Md. Oct. 26, 2007); In re James Plaza Joint Venture,* 62 B.R. 959, 961 (Bankr. S.D. Tex. 1986) (appointing interim trustee in involuntary chapter 7 bankruptcy pursuant to section 303(g) standard).

28.        Similarly, Rule 2001 of the Federal Rules of Bankruptcy Procedure states that at any time following the commencement of an involuntary liquidation case and before an order for relief, the court on written motion of a party in interest may order the appointment of an interim trustee under section 303(g) of the Bankruptcy Code. FED. R. BANKR. PROC. 2001(a). Rule 2001 further provides that the motion shall set forth the necessity for the appointment and may be granted only after hearing on notice to the debtor, the petitioning creditors, the United States trustee, and other parties in interest as the court may designate. *Id.*

29.        Additionally, an interim trustee may not be appointed under Rule 2001 unless the movant furnishes a bond in an amount approved by the court, conditioned to indemnify the debtor for costs, attorney's fees, expenses, and damages allowable under section 303(i) of the Bankruptcy Code. FED. R. BANKR. PROC. 2001(b).

30.        Courts install interim trustees in instances where it is necessary to protect and preserve the property of the debtor's estate. *See In re DiLorenzo*, 161 B.R. 752, 754 n.8 (Bankr.

S.D.N.Y. 1993) (providing circumstances where courts have installed interim trustees). Specifically, interim trustees are appointed when necessary to protect the debtor's estate by preventing the concealment, waste, loss or conversion of the assets by the alleged debtor. *Id.; see also In re Rush*, 10 B.R. 518, 523 (Bankr. N.D. Ala. 1980). Simply put, an interim trustee needs to be appointed when the alleged debtor may cause irreparable harm to the estate during the gap period. *See, e.g., In re Lollipop, Inc.*, 205 B.R. 682, 684 (Bankr. E.D.N.Y. 19970 (interim trustee appointed where debtor's principals were depleting company's assets and converting the proceeds for personal use); *In re R.S. Grist Co.*, 16 B.R. 872, 873 (Bankr. S.D. Fla. 1982) (appointment of interim trustee was necessary to prevent diversion of assets from debtor's estate without adequate consideration); *In re Gems N' Things, Inc.*, 60 B.R. 288, 289 (Bankr. S.D.N.Y. 1986) (interim trustee installed where debtor posted notice that it was going out of business and liquidating assets and concern that debtor was diverting cash receipts and collections to improper use).

31.        Here, there is an immediate need for an interim trustee. Alleged Debtor is currently not operating any business and is insolvent and unable to pay its debts as they mature, and therefore Alleged Debtor cannot generate any revenue. Alleged Debtor's management, and insurers, should be immediately replaced to prevent further losses to the estate and its creditors. Further, the transactions described above strongly suggest that Alleged Debtor's business strategy appears to be to liquidate the company's marketable assets and leave the company with countless unpaid creditors. Thus, the relief sought in this Motion is necessary.

32.        Finally, because the Alleged Debtor will not suffer harm when the interim trustee is appointed, there is no need for a bond to indemnify the Alleged Debtor. Furthermore, as demonstrated above, the Petitioning Creditors have met the involuntary petition requirements and therefore, the petition will not likely be dismissed and no damages will be assessed per section

303(i).  Indeed, the Petitioning Creditors hold unsecured claims against Alleged Debtor well in excess $3 million and Alleged Debtor is currently defending their lawsuit wherein Alleged Debtor's creditors are seeking substantially more than $3 million.  Moreover, Alleged Debtor actually benefitted from the filing of this involuntary case because of the automatic stay.  Accordingly, Petitioning Creditors request the Court set the bond at $100.00.

<b><u>BASIS FOR EMERGENCY RELIEF</u></b>

33.     An emergency exists because Petitioning Creditors face immediate and irreparable harm to the estate absent the emergency consideration of the relief requested in this Motion.  The Petitioning Creditors request that the Court set a hearing on this Motion as soon as practicable.

WHEREFORE, the Petitioning Creditors request that this Court enter an order, in substantially the form filed herewith, granting the relief requested in this Motion, and such other and further relief as may be just and proper under the circumstances.

Dated:  January 26, 2021.

Respectfully submitted,

*/s/ Shelby A. Jordan*
SHELBY A. JORDAN
State Bar No. 11016700
S.D. No. 2195
ANTONIO ORTIZ
State Bar No. 24074839
S.D. No. 1127322
***Jordan, Holzer & Ortiz, P.C.***
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone:  (361) 884-5678
Facsimile:  (361) 888-5555
Email: sjordan@jhwclaw.com
        aortiz@jhwclaw.com
**COUNSEL FOR PETITIONING CREDITORS**

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that notice of the filing of this Motion has been served on the below named parties by available knowledge, including by email, if known, fax, if known, and overnight mail, if known, CMRR, if known and/or by the Court's CM/ECF system on January 26, 2021.

Josiah's Trucking LLC (Via Fed Ex)
c/o David Vasquez, Registered Agent
7612 Petirrojo Street
Edinburg, TX 78542

Brooklyn Specialty Insurance    (Via Fed Ex & via email claims@brooklynspecialty.com)
Company RRG, Inc.
5630 University Pkwy
Winston-Salem, NC 27105

Rogelio Solis (Via Fed Ex and email office@381help.com)
De la Fuente & Solis, PLLC
205 E. Expressway 83
Pharr, TX 78577
*Attorney for Ana Gomez and Reyes Adrian Ortiz obo Anna Isabel Ortiz, deceased*

Daniel Sorrells (via CMRR #70201290000161275492)
Daniel Sorrells Law Firm, PLLC
PO Box 2307
Edinburg, TX 78540
*Attorney for Ana Gomez and Reyes Adrian Ortiz obo Anna Isabel Ortiz, deceased*

Ana Gomez (via Fed Ex)
3707 E. US Bus. Hwy. 83
Lot 215
Donna, TX 78537
*Mother of Ortiz deceased*

Reyes Adrian Ortiz (via Fed Ex)
1000 Darlene Avenue
Weslaco, TX 78599
*Father of Ortiz deceased*

Luis M. Cardenas (via email: luis@escobedocardenas.com)
Escobedo & Cardenas, L.L.P.
1602 Dulcinea
Edinburg, Texas 78539
*Attorney for Sonia Tellez,*
*Carlos Tellez and Rose Mary*
*Rodriguez, Individually and*
*As Next Friend of I. Tellez, a minor*

/s/ Shelby A. Jordan
Shelby A. Jordan