United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 04, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 21-70009 |
| **JOSIAHS TRUCKING, LLC,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| | § | CHAPTER 7 |

## MEMORANDUM OPINION

Following a lengthy interlocutory appeal in this case, a global resolution was reached during negotiations between Ana Gomez and Law Office of Rogelio Solis, PLLC and Catherine Stone Curtis, the Chapter 7 Trustee of the Josiah's Trucking LLC bankruptcy estate at mediation on Friday, April 11, 2025, in San Antonio, Texas. The Chapter 7 Trustee now seeks to enforce and the Court to approve the Mediated Settlement Agreement with Ana Gomez and Law Office of Rogelio Solis, PLLC for a total settlement amount of $400,000.00. Nevertheless, at the May 2, 2025 hearing, the Court learned that although the Law Office of Rogelio Solis, PLLC had already tendered the $100,000 portion of the settlement proceeds to the Trustee, Ms. Gomez had not tendered her portion in the amount of $299,000.00. The Court issued an order to show cause requiring Ms. Gomez and The Solis Law Firm to demonstrate whether or not they failed to maintain in their possession, custody and control a combined balance of not less than $400,000.00 pursuant to this Court's March 9, 2021 Order at ECF No. 30 in Case No. 21-7002.

On, Tuesday, May 20, 2025 the Court conducted a hearing and for the reasons stated herein, grants the motion to approve the Mediated Settlement Agreement, and sanctions Ms. Gomez and The Solis Law Firm for failure to comply with this Court's March 9, 2021 Order at ECF No. 30 in Case No. 21-7002.

I. FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

A. Background

1. On January 26, 2021, the instant involuntary bankruptcy petition under chapter 7 of the Bankruptcy Code[1] was filed initiating the underlying bankruptcy case and creating the bankruptcy estate (the "*Bankruptcy Estate*").[2]

2. On February 9, 2021, Catherine Stone Curtis, the chapter 7 Trustee for the above-referenced bankruptcy estate (the "*Trustee*") filed her *Complaint to Avoid and Recover Transfer Pursuant to 11 U.S.C. §§ 547 and 550* (the "*Complaint*") against the Law Office of Rogelio Solis, PLLC; the Daniel Sorrells Law Firm, PLLC; Ana Gomez; Reyes Adrian Ortiz, individually and obo Anna Isabel Ortiz, Deceased; and Rogelio Solis and Daniel Sorrells (the "*Defendants*"), (together the "*Parties*").[3]

3. The Complaint in adversary proceeding No. 21-7001 (the "*Adversary Proceeding*") seeks recovery of $1,000,000 under a liability Policy ATP-4-062020 (the "*Policy*") transferred to the Solis Law Firm in settlement of Ms. Gomez's claim against the Debtor[4] (the "*Transfer*").

4. On March 9, 2021, the Court entered a Stipulated Order in which "[t]he Solis Law Firm and Ana Gomez will at all times maintain in their possession, custody and control a combined balance of not less than $400,000.00 during the time period this Stipulation is in effect, which period shall be no less than 60 days from the date the Court enters this

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.
[2] "Bankr. ECF" refers docket entries made in the Debtor's bankruptcy case, No. 21-7009. Entries made in Adversary number 21-7002 shall take the format of ECF No. __.
[3] ECF No. 1.
[4] ECF No. 182 at 5.

Stipulation" (the "*March 9, 2021 Stipulation*").[5]

5. On March 26, 2021, the Trustee dismissed Daniel Sorrells Law Firm, PLLC, Rogelio Solis and Daniel Sorrells from the Complaint.[6] On the same date, the Trustee amended her Complaint.[7]

6. On April 9, 2021, Defendants filed a Motion to Withdraw the Reference.[8]

7. On May 13, 2021, the Court issued its Report and Recommendation.[9]

8. On July 13, 2022, the District Court adopted the Court's Report and Recommendation.[10]

9. On November 9, 2022, the Court issued its order denying Defendant's motion to dismiss the instant adversary proceeding.[11]

10. On November 23, 2022, Defendants requested a certification of the dismissal to the Fifth Circuit Court of Appeals.[12]

11. On January 6, 2023, the matter was certified for a direct appeal to the Fifth Circuit Court of Appeals.[13]

12. On April 21, 2025, the Trustee filed "Trustee's Expedited Motion For Approval Of Global Compromise after Mediation and (ii) Enforce Mediated Settlement Agreement"[1] (the "*9019 Motion*") filed on April 21, 2025 by Catherine Stone Curtis, Chapter 7 Trustee (the "*Chapter 7 Trustee*").[14] A Settlement Agreement was signed by all parties (the "*Settlement Agreement*").[2]

13. On May 2, 2025, this Court held an initial hearing on the Settlement Agreement. At the hearing it was revealed that this Court's order at ECF No. 30 (the "*March 9, 2021 Order*") may not have been fully complied with by Ms. Ana Gomez ("*Ms. Gomez*"). The Settlement Agreement required that the Solis Law Firm and Ms. Gomez pay into the bankruptcy estate as follows: (i) Ms. Gomez shall transfer $82,000.00 to the Trustee so that it is received by the Trustee on or before April 14, 2025, (ii) The Solis Law Firm shall pay $100,000.00 to the Trustee so that it is received by the Trustee on or before April 14, 2025; and (iii) Ms. Gomez shall pay to $217,000.00 to the Trustee so that it is received by the Trustee on

---

[5] ECF No. 30 at 4.
[6] ECF Nos. 35, 36, and 37.
[7] ECF No. 38.
[8] ECF No. 42.
[9] ECF No. 56.
[10] ECF No. 59.
[11] ECF No. 69.
[12] ECF No. 82.
[13] ECF No. 96.
[14] Bankr. ECF No. 182.

or before June 10, 2025 (collectively, the "*Payments*, or "*Settlement Amount*").

14. At the May 2, 2025, hearing the Trustee confirmed that she had already received the $100,000 payment from the Solis Law Firm but that she had not yet received the $82,000 payment from Ms. Gomez. This was confirmed by Ms. Gomez on the record. Ms. Gomez further testified that the total amount of funds in her possession is $189,000.00. Ms. Gomez's total commitment under the terms of the Settlement Agreement is the total amount of $299,000 to the chapter 7 estate. Also at the May 2, 2025 hearing Carlos and Sonya Tellez ("*Petitioning Creditors"*) appeared in person and requested additional time to hire counsel.

15. The Court issued and order setting an in person hearing on Tuesday, May 20, 2025, at 9:00 a.m. (Central Standard Time), before the United States Bankruptcy Court at 1701 W. Business Hwy 83, 10th Floor Courtroom, McAllen, Texas 78501 where the order stated that the Court would take further evidence on the Settlement Agreement and compliance with this Court's March 9, 2021 Order at ECF No. 30 in Case No. 21-7002. The order further stated that no later than 12:00 noon Friday, May 16, 2025, Ms. Gomez must wire transfer the total amount of $189,000.00 in good and sufficient funds to the Chapter 7 Trustee pursuant to the Trustee's previously provided wiring instructions and that Ms. Gomez and The Solis Law Firm must show cause as to whether or not they failed to maintain in their possession, custody and control a combined balance of not less than $400,000.00 pursuant to this Court's March 9, 2021 Order at ECF No. 30 in Case No. 21-7002.

16. On Tuesday, May 20, 2025, the Court held a hearing and now issues its instant Memorandum Opinion.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[15] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[16] This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) this proceeding contains core matters, as it primarily involves proceedings concerning the administration of this estate.[17] This proceeding is also core under the general

---

[15] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[16] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[17] *See* 11 U.S.C. § 157(b)(2)(A) & (O).

"catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[18] This Court may only hear a case in which venue is proper.[19] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor had its principal place of business in Edinburg, Texas and therefore, venue of this proceeding is proper.[20]

### B. Constitutional Authority to Enter a Final Order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[21] Requests for authority to compromise disputes under Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 9019 are a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) and have no equivalent in state law, thereby rendering the Supreme Court's opinion in *Stern v. Marshall* inapplicable.[22] In the alternative, a request for authority to compromise under Bankruptcy Rule 9019 is an essential bankruptcy matter, triggering the "public rights" exception.[23] Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[24]

---

[18] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).
[19] 28 U.S.C. § 1408.
[20] Bankr. ECF No. 1.
[21] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).
[22] *See In re Carlew*, 469 B.R. 666, 672 (Bankr. S.D. Tex. 2012) (discussing *Stern v. Marshall*, 564 U.S. 462 (2011)).
[23] *See id.*
[24] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' …. We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S. Ct. 2594).

### III. ANALYSIS

#### A. The Motion to Compromise

Bankruptcy Rule 9019 authorizes bankruptcy courts to approve compromises and settlements with the trustee.[25] Under Bankruptcy Rule 9019, the decision to approve the compromise of a controversy is within the sound discretion of the Court, but the compromise must be "fair and equitable."[26] The Court should "make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'"[27] The Court does not substitute its own judgment for the trustee's, but instead reviews all the issues and determines "whether the settlement falls below the lowest point in the range of reasonableness."[28]

Before accepting a compromise, a Chapter 7 Trustee must reach "an informed judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays, and expense of prolonged litigation in an uncertain cause."[29] Although the trustee bears the burden of establishing that the proposed compromise is in the best interest of the bankruptcy estate, compromises are a normal part of the bankruptcy process and oftentimes a desirable and wise method of bringing to a close proceeding that are otherwise lengthy, complicated and costly. As such, the trustee's burden is not high.[30] "The Trustee need only show that . . . [her] decision falls within the 'range of reasonable litigation alternatives.'"[31]

---

[25] FED. R. BANKR. P. 9019(a).
[26] *See In re Aweco, Inc.*, 725 F.2d 293, 297 (5th Cir.), *cert denied*, 496 U.S. 880 (1984); *In re Cajun Elec. Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997).
[27] *In re Cajun Elec. Power Coop.*, 119 F.3d at 356 (citing *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980)).
[28] *In re W.T. Grant Co.*, 699 F.2d 599, 609 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied sub nom.*, *Benson v. Newman*, 409 U.S. 1039 (1972)).
[29] *In re Mailman Steam Carpet Cleaning Corp.*, 212 F.3d 632, 635 (1st Cir. 2000) (citing *In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)).
[30] *In re Shankman*, No. 08-36327, 2010 WL 743297, at *3 (Bankr. S.D. Tex. Mar. 2, 2010).
[31] *Id.* (internal citations omitted).

Within the Fifth Circuit, courts must consider (i) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (ii) difficulty of collection of any judgment; (iii) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; (iv) all other factors bearing on the wisdom of the compromise; (v) the extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion; and (vi) deference to the concerns of creditors.[32] The Court will consider each in turn.

1. **Probability of Success in the Litigation**

The Fifth Circuit teaches that with respect to the first factor: "it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. 'The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision . . . .'"[33]

Applicable here, the instant litigation centers around recovery through the Trustee's avoidance powers pursuant to 11 U.S.C. §§ 547 and 550.[34] In the preliminary stages of this litigation, this Court found that pre-petition payment of insurance proceeds to a tort claimant creditor of a debtor, made in accordance with state insurance law, constitutes a "transfer of an interest of the debtor in property" under 11 U.S.C. § 547.[35] The Fifth Circuit affirmed this holding, finding that the Trustee's Complaint alleges facts "falling under the 'limited circumstances' in which *In re Charters, L.L.C* states that insurance proceeds are considered property of the estate."[36]

Under the Settlement Agreement, upon receipt in full of the total Settlement Amount and upon entry of a final and non-appealable order approving the 9019 Motion, the Trustee would

---

[32] *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980); *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc., v. Anderson* 390 U.S. 414, 425 (1968).
[33] *In re Cajun Elec. Power Co-Op, Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) (quoting *La Salle Nat'l Bank v. Holland* (*In re American Reserve Corp.*), 841 F.2d 159, 163 (7th Cir. 1987).
[34] *See* Bankr. ECF No. 182 at 6.
[35] *Curtis v. Law Off. Of Regelio Solis PLLC* (*In re Josiahs Trucking LLC*), 645 B.R. 208 (Bankr. S.D. Tex. 2022).
[36] *Law Office of Regelio Solis PLLC v. Curtis*, 83 F.4th 409, 414 (5th Cir. 2023).

dismiss its claims against Defendants.[37] Trustee asserts that while she believes she will continue to be successful in the Adversary Proceeding and any further appeals, she also believes that the costs to the Bankruptcy Estate will increase if trial is necessary, coincided with a risk that a portion of the Transfer may be insulated by the Solis Law Firm's good faith defense.[38] Based on her judgment, Trustee believes the instant 9019 Motion will yield a higher recovery than litigating the Adversary Proceeding to a trial on the merits.[39]

Considering the likelihood of success against the risk, the Court finds this factor weighs slightly against approving the 9019 Motion as the likelihood of success generally seems to favor the Trustee.[40] The Court will next consider the difficulty in collecting the judgment.

### 2. Difficulty in Collecting the Judgment

Trustee anticipates that any judgment awarded would be vigorously appealed by the Defendants, and the costs of collections, including the costs to defend further appeals would require increased expenditures from the Bankruptcy Estate.[41] Additionally and bolstered by the testimony of Ms. Gomez, dissipation of the Agreed Reserve, as discussed *infra*, raises significant concern regarding collectability of a judgment, particularly because most of the funds initially transferred to Ms. Gomez have been spent on items such as school and her homestead.[42] Nevertheless, Ms. Gomez has demonstrated and expressed a willingness to fulfill her obligations pursuant to the Settlement Agreement, signifying heightened assurance that the Bankruptcy Estate will at least receive the negotiated $400,000.[43] Accordingly, in weighing the risks associated with collection of the full $1,000,000 judgment, the Court finds this factor weighs in favor of approving

---

[37] Bankr. ECF No. 182.
[38] Bankr. ECF No. 182; Courtroom Hearing May 20, 2025 – (Curtis, testifying).
[39] *Id.*
[40] *See Cajun*, 119 F.3d at 357.
[41] Bankr. ECF No. 182; Courtroom Hearing May 20, 2025 – (Curtis, testifying).
[42] Courtroom Hearing May 20, 2025 – (Gomez, testifying).
[43] *Id.*

the 9019 Motion. The Court will next consider the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay.

### 3. Complexity and Duration of the Litigation

Trustee asserts that the instant litigation does not involve complex factual or legal matters but believes that any judgment would be vigorously appealed which would add uncertainty.[44] Upon a review of the Claims, the Court finds that the litigation is not overly complex; however, the litigation's propensity thus far to draw numerous levels of appeal indicates increased layers of complexity, delay, and cost to the Bankruptcy Estate should the litigation continue.[45] As such, the Court finds this factor favors approving the 9019 Motion. The Court will next consider all other factors bearing on the wisdom of the compromise.

### 4. All Other Factors Bearing on the Wisdom of the Compromise

Trustee asserts that compromising the instant claim will create certainty to years-long litigation which will be beneficial to the estate.[46] There is no dispute that granting the 9019 Motion will conclude the litigation, save for collection of the Settlement Amount as discussed *infra*.[47]

Notably, the 9019 Motion and underlying Settlement Agreement also does not release any sanctions, monetary or otherwise that this Court may impose related to the violation of the Agreed Order.[48] To the extent monetary sanctions are to be paid to the Bankruptcy Estate by one or more Defendants, such funds are in addition to the Settlement Amount.[49] The Court finds this provision supports the 9019 Motion, as sanctions attributable for violating this Court's Order as discussed *infra*, thus have no bearing on the underlying Settlement Agreement.[50] As such, the Court finds

---

[44] Bankr. ECF No. 182; Courtroom Hearing May 20, 2025 – (Curtis, testifying).
[45] *See Cajun*, 119 F.3d at 357.
[46] Bankr. ECF No. 182; Courtroom Hearing May 20, 2025 – (Curtis, testifying).
[47] Courtroom Hearing May 20, 2025 – (Gomez, testifying).
[48] Bankr. ECF No. 182-1 at 4.
[49] *Id.*
[50] *Id.*

this factor favors approving the 9019 Motion.[51] The Court will next consider the extent to which the compromise is the product of arms-length bargaining and not fraud or collusion.

### 5. The Extent to Which the Settlement is Product of Arms-Length Bargaining and Not Fraud or Collusion

The instant Mediated Settlement Agreement is the result of a more than ten-hour meditation by the Honorable United States Bankruptcy Judge Craig Gargotta in the Western District of Texas.[52] All parties were represented by counsel and based on the representations made to the Court by the Trustee and the other parties, the Court finds that the Settlement Agreement is the product of arms-length bargaining and not fraudulent. As such, the Court finds this factor favors approving the 9019 Motion.[53] The Court will next consider the final factor, deference to creditors.

### 6. Deference to Creditors

Trustee asserts that the compromise is beneficial to the Bankruptcy Estate as it avoids the continued expense and potential uncertainty of litigation and collection in favor of cash payments.[54] No objections were filed to the 9019 Motion.[55] Nevertheless, the "test is not the desire of the majority…but the best interests of the creditors, taking into account their reasonable views."[56]

Trustee testified at length that the instant settlement if fully collected would exceed all administrative expenses incurred in the adversary proceeding thus far and produce a recovery for creditors.[57] No opposition was raised by any creditor at the hearing. Because the 9019 Motion

---

[51] *See Cajun*, 119 F.3d at 357.
[52] Bankr. ECF No. 182; Courtroom Hearing May 20, 2025 – (Curtis, testifying).
[53] *See Cajun*, 119 F.3d at 358.
[54] Bankr. ECF No. 182; Courtroom Hearing May 20, 2025 – (Curtis, testifying).
[55] *See generally* Bankr. ECF.
[56] *Cajun*, 119 F.3d at 358.
[57] Bankr. ECF No. 182; Courtroom Hearing May 20, 2025 – (Curtis, testifying).

would benefit creditors and no opposition has been raised, the Court finds this factor favors approving the 9019 Motion.[58]

Accordingly, because all but one of the factors laid out by the Fifth Circuit favor approval of the settlement, the Court will approve the 9019 Motion. The Court will next consider whether Ms. Gomez and the Solis Law Firm should be held in civil contempt for not complying with the March 12, 2021 Stipulation.[59]

### B. The March 9, 2021 Stipulation

The Court's orders, including stipulations entered by the Court, are not suggestions and failure to adhere to them exposes parties to civil contempt.[60] In the Fifth Circuit, civil contempt is demonstrated when the following elements are demonstrated by clear and convincing elements: (1) a court order was in effect, (2) the order required certain conduct by the respondent, and (3) the respondent failed to comply with the court's order.[61] Here, each element is satisfied as to both Ms. Gomez and the Solis Law Firm.

On March 9, 2021, the Parties entered a Stipulation and Agreed Order whereby the Defendants agreed to "at all times maintain in their possession, custody and control a combined balance of not less than $400,000.00 during the time period [that the] Stipulation is in effect, which period shall be no less than 60 days from the date the Court enters this Stipulation."[62] On the same day, the Court entered the March 9, 2021 Stipulation.[63] The March 9, 2021 Stipulation has remained in effect to present day.[64]

---

[58] *Cajun*, 119 F.3d at 358 ("In any event, given that all of the other factors in the equation overwhelmingly favor the settlement, the wishes of the trade creditors do not compel us to reject the settlement.").
[59] Bankr. ECF No. 190.
[60] *See Baddock v. Villard (In re Baum)*, 606 F.2d 592, 593 (5th Cir.1979).
[61] *Piggly Wiggly Clarksville, Inc. v. Mrs Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999).
[62] ECF No. 29.
[63] ECF No. 30.
[64] ECF No. 30 at 4. ("For the avoidance of doubt, the obligations of the Solis Law Firm and Ana Gomez to maintain the combined balance of not less than $400,000.00 in their possession, custody and control shall remain in full force

On May 2, 2025, Ms. Gomez testified and indicated that the combined balance maintained by the Parties pursuant to the March 9, 2021 Stipulation was not $400,000.[65] On May 20, 2025, Ms. Gomez confirmed her noncompliance with the March 9, 2021 Stipulation, asserting her mistaken belief that she could spend the money in her possession.[66] The obligation of Ms. Gomez and the Solis Law Firm to maintain a combined balance of $400,000 in their possession, custody, and control was therefore not satisfied.[67] Accordingly, the Court finds that both the Solis Law Firm and Ms. Gomez shall be held in civil contempt of the March 9, 2021 Stipulation.

Civil contempt sanctions in the Fifth Circuit are remedial in nature and are designed to either coerce compliance with a court order or compensate the complainant for losses sustained due to non-compliance.[68] The sanctions may include fines, compensatory damages, or coercive measures such as confinement until compliance is achieved.[69] The Court has broad discretion in determining the appropriate sanctions, as long as they are remedial and not punitive.[70]

Failure to comply with the March 9, 2021 Stipulation has resulted in collection difficulty for the Trustee, as the $400,000 held in control was supposed to be turned over to the Trustee pursuant to the terms of the Settlement Agreement.[71] The Solis Law Firm tendered its portion in the amount of $100,000, and Ms. Gomez tendered a payment of $190,000, but Ms. Gomez indicated that she would need to take out a loan to pay her outstanding balance of $109,000 to the Trustee and was having difficulty doing so.[72] The harm for noncompliance has thus already been

---

and effect until the earlier of (a) further order of the Court, or (b) the expiration of the Notice Period without the Court having granted a preliminary injunction in favor of the Trustee.").
[65] Courtroom Hearing May 20, 2025 – (Gomez, testifying).
[66] Courtroom Hearing May 20, 2025 – (Gomez, testifying).
[67] ECF No. 30 at 4.
[68] *Carter v. Loc*, 556, 138 F.4th 164, 209 (5th Cir. 2025).
[69] *See Alberti v. Klevenhagen*, 46 F.3d 1347, 1359-60 (5th Cir. 1995).
[70] *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005).
[71] Bankr. ECF No. 182.
[72] Courtroom Hearing May 20, 2025 – (Curtis, Gomez, testifying).

realized by the Trustee for as long as Ms. Gomez fails to tender her outstanding payments under the Settlement Agreement.[73] Despite argument that The Solis Law Firm had maintained its portion and that Ms. Gomez was responsible for maintaining $300,000, the March 9, 2021 Stipulation is clear that the obligation falls on both parties, irrespective any informal understandings between The Solis Law Firm and Ms. Gomez in practice.[74]

Accordingly, the Court finds that a fine equivalent to $100 a day is appropriate, beginning on August 4, 2025, attributable jointly to both the Solis Law Firm and Ms. Gomez until either party replenishes the outstanding $109,000 that should have been held in joint control by both the Solis Law Firm and Ms. Gomez. The fine per day is in addition to the outstanding $109,000 and payable to the Trustee as an asset for the Bankruptcy Estate. Either the Solis Law Firm or Ms. Gomez may purge the contempt by rendering the outstanding balance of $109,000 to the Trustee.

### IV. CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED August 4, 2025

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

---

[73] *Id.*
[74] *Id.*